IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Fletcher,                                            Case No. 5:09 CV 1017

                                    Petitioner,        MEMORANDUM OPINION
                                                       AND ORDER
            -vs-
                                                       JUDGE JACK ZOUHARY
Maggie Beightler, Warden,

                                    Respondent.


### INTRODUCTION

This matter comes before the Court on *pro se* Petitioner Jeffrey Fletcher's (Fletcher) Petition

for Writ of Habeas Corpus (Doc. No. 1).  Respondent Margaret Beightler (Beightler), Warden of the

Marion Correctional Institution, filed a Return of Writ (Doc. No. 8) opposing the Petition.  Fletcher

filed a traverse (Doc. No. 13) and Beightler filed her Response (Doc. No. 14).  This Court has

jurisdiction under 28 U.S.C. § 2254(a).

The case was referred to Magistrate Armstrong for a Report and Recommendation (R&R)

pursuant to Local Rule 72.2.  The Magistrate recommended this Court deny the Petition (Doc. No.

20) and Fletcher filed an Objection (Doc. No. 23).  Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208

(6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of

the Magistrate's findings and, for the reasons set forth below, adopts the recommendation to deny the

Petition.

## BACKGROUND

The Ohio court of appeals set forth the relevant factual background in *Ohio v. Fletcher*, WL 2514058, 2008-Ohio-3105 (Ohio Ct. App. 2008).  These factual findings are presumed correct. *Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009) (citing 28 § U.S.C. 2254(e)).

Briefly, Fletcher  was convicted of felonious assault, with a firearm specification, and domestic violence for an incident involving Fletcher's then-girlfriend, Linda Weaver.  Weaver testified the two were not getting along and had been sleeping apart for six months preceding the incident as follows (*Fletcher*, WL 2514058, at *3–4):

{¶ 16} Ms. Weaver got up at 5:00 a.m. on August 30, 2006, because she had to cover a shift for a co-worker.  She passed Fletcher, who was sleeping on the couch in the living room, on her way to the kitchen to make coffee.  In order to use the coffeepot, she moved a pizza box and threw it on the floor beside the full trash can.  At the sound of that, Fletcher jumped up from the couch and ran toward the kitchen and began chastising her for her behavior.  Fletcher told Ms. Weaver that she could no longer stay in his home unless she started paying rent.  Ms. Weaver then asked Fletcher to repay her $300.00 she had lent him.  When he told her that she would never see that money, Ms. Weaver walked to the stereo in the living room, began playing with the buttons on the stereo, and commented that she was sure she could get $300.00 for the stereo. Ms. Weaver admitted that she was trying to irritate Fletcher because she had not had any coffee yet that morning and she needed to get to work.

{¶ 17} Ms. Weaver testified that Fletcher then grabbed her by the chin and head and "snapped" her neck, which made an audible "pop" and caused her "an incredible amount of pain."  She testified that Fletcher's actions caused her body to spin around and hit a DVD/CD tower near the stereo.  She testified that as she began falling down, Fletcher hit her with his forearms in her head and shoulders.  Ms. Weaver testified that Fletcher looked at the tower on the floor and began to yell at her for knocking it over. She testified that he then threatened to destroy her laptop computer.  Fletcher began to move in the direction of her bedroom, watching her as he did so.  Ms. Weaver testified that she decided not to try to stop him because past violent experiences with him made her think that her interference would only escalate the situation.

{¶ 18} Ms. Weaver testified that she pulled herself to her feet and turned towards the door, intending to let Fletcher do whatever he was going to do to her computer.  She testified that Fletcher approached her and twisted her neck a second time, causing her to again fall to the floor.  She testified that she picked herself up, turned and fell onto

2

the couch.  She testified that there was a .45 caliber handgun nearby on the coffee table.  She testified that she picked up the gun and began to wave it at Fletcher so that he would not continue to hurt her.

{¶ 19} Ms. Weaver testified that Fletcher ran towards her and began twisting the gun out of her hands.  She ended up lying on the couch with her feet on the ground as he continued to twist the gun from her grip.  Ms. Weaver testified that Fletcher wrestled the gun from her hands, stepped back, and fiddled with the gun as though he was trying to turn the safety off.  She testified that Fletcher put the gun to her chest, stepped back and "fiddle[d]" with the gun, put the gun to her chest again, then stepped back again.  Ms. Weaver testified that, after that back and forth, Fletcher discharged the gun as he stood back from her.  She testified that she immediately sat up as the bullet entered her.  She testified that Fletcher picked up her shirt in the back and told her to get up. She testified that she stumbled as she tried to stand, and she fell into the couch.

Fletcher immediately took Weaver to the hospital, where she eventually recovered.

An investigation by the Akron Police Department followed, prompting Fletcher's indictment. Fletcher was found guilty of felonious assault, with a firearm specification, and domestic violence. He was sentenced to six years imprisonment -- three years each for the felonious assault and firearm possession, to be served consecutively, and six months for the domestic violence charge, to be served concurrently with the other charges.

Fletcher appealed his conviction to the Ohio court of appeals, which affirmed, and to the Ohio Supreme Court, which declined review.  Fletcher also made a direct appeal to the Ohio Supreme Court, which again denied review.  Fletcher later moved the trial court to vacate the judgment, which it denied.  He then filed an application to reopen his case with the court of appeals pursuant to Ohio Appellate Rule 26(B), which was also denied.  Thereafter, Fletcher filed this Petition for Writ of Habeas Corpus.

## STANDARD OF REVIEW

When a federal habeas claim has been adjudicated by the state courts, 28 U.S.C. § 2254(d)(1) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable," and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–411; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, and rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004). Furthermore, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

## DISCUSSION

Fletcher raises thirteen grounds for relief in his Petition, each found by the Magistrate to be without merit. Fletcher objects to all of the Magistrate's conclusions, except for the treatment of Fletcher's twelfth ground for relief, which the parties agree was not exhausted. Each objection will be addressed in turn.

4

**Insufficiency of the Evidence**

Fletcher first argues that the evidence presented at trial was insufficient to sustain a conviction for felonious assault because the State failed to prove that he acted "knowingly" as required by R.C. 2903.11(A)(1) ("No person shall knowingly . . . cause serious harm to another . . . ."). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). On habeas review, this Court makes an independent review of the state court record in analyzing Fletcher's claim of insufficiency of the evidence. *Ob'Saint v. Warden, Toledo Corr. Instit.*, 675 F. Supp. 2d 827, 838 (S.D. Ohio 2009) (citing *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006)). However, this Court "does not reweigh the evidence or determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Id.* at 838–39 (citing *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)). "A conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Here, sufficient evidence was presented at trial to convict Fletcher. Weaver testified at great length regarding how Fletcher injured her. She testified that Fletcher wrested the gun from her, stepped back, disengaged the safety and fired a shot into her chest. Although Fletcher testified that Weaver was shot accidently during a struggle over the gun, Detectives Sutton and Schaffer of the Akron Police Department both testified as to inconsistencies in Fletcher's version of the facts. Moreover, Officer Kevin Davis of the Akron Police Department testified that the trajectory of the bullet wound and the lack of muzzle blast on Weaver's clothing indicated she must have been shot from a distance of about one foot. Officer Davis further testified that there is a high probability that

5

Weaver was disarmed by Fletcher when she was shot.  Based on the testimony in the record, the evidence supports the jury's finding that Fletcher "knowingly" caused serious physical harm to Weaver.

Contrary to Fletcher's assertion, *Nash v. Eberlin* does not support his request for relief.  There, the defendant was convicted in state court of felonious assault for attempting to cause physical harm to his wife.  258 F. App'x at 766.  The court in *Nash* found the evidence supported nothing more than the defendant bringing out a gun to scare his wife, and the gun discharged while the defendant struggled with his son.  *Id.*  Two shots were unintentionally fired, one into the ground and the other into the wall.  *Id.* at 762.  The court held objectively unreasonable that any reasonable trier of fact could find beyond a reasonable doubt that the defendant knowingly attempted to cause physical harm through the use of a deadly weapon.  *Id.* at 766.  The court made clear that felonious assault requires more than a struggle over a gun and an unintended discharge.  *Id.*

Unlike the lack of evidence in *Nash*, Fletcher's mental state was established by Weaver's testimony that Fletcher pointed the gun at her, disengaged the safety, and actually shot her.  The evidence presented at trial was sufficient to demonstrate all elements of felonious assault for which Fletcher was charged.

**Other Bad Acts**

Fletcher next argues the Magistrate erred in finding the introduction of other bad acts at trial was permissible, specifically the following testimony: (1) Fletcher shot at stray animals; (2) abused his dogs; and (3) committed other acts of domestic violence against Weaver.  Fletcher also argues that the trial court itself should have given a limiting instruction on the use of this testimony, even though Fletcher's counsel failed to request such an instruction.

6

The Sixth Circuit has noted that "habeas review does not ordinarily extend to state court rulings on the admissibility of evidence." *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001) (citing *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967); *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976)); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) ("Because this is an appeal from a habeas corpus decision and not an appeal from Coleman's state conviction, we do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence.'" (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988))).  Furthermore, "errors of state law, especially errors based on a trial court's evidentiary rulings, do not, in and of themselves, violate the constitution." *Buell*, 274 F.3d at 357 (citing *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996)).

"When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id*.  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

This Court reviews the result of a state court decision under the highly deferential AEDPA standard to determine whether that decision was contrary to clearly established Supreme Court precedent.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  As the court in *Bugh* pointed out, however, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id*.  Fletcher has not directed this Court to any Supreme Court precedent which the trial court's decision is contrary

7

to, nor was the trial court's decision to allow such testimony so egregious to deny Fletcher fundamental fairness, especially in light of the other evidence presented against him.

In any event, Weaver's testimony that Fletcher (1) shot at stray animals, (2) abused his dogs, and (3) committed other acts of domestic violence against Weaver, was not prejudicial and did not affect the outcome of the trial.  Even if the trial court improperly admitted other acts evidence, it is harmless error if the remaining evidence alone supports a conviction beyond a reasonable doubt. *State v. Williams*, 6 Ohio St. 3d 281, 290 (1983); *State v. Conway*, 109 Ohio St. 3d 412 (2006); *State v. Brown*, 100 Ohio St. 3d 51, 57 (2003).

Here, Weaver's reference to Fletcher shooting at stray animals was of little consequence, if any at all, and does not compare to the substantial evidence at trial supporting Fletcher's conviction. Weaver's remarks were gratuitous, unsolicited by the prosecutor, and not outcome determinative.  In regard to Weaver's allegation that Fletcher allegedly beat his dogs, defense counsel quickly objected, the trial judge sustained the objection, and Weaver did not elaborate on the incident (Doc. No. 9-2 at 35).  Finally, Weaver's testimony regarding prior acts of domestic violence was admissible under Federal Evidence Rule 404(B):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although the record reads cold and does not describe the trial judge's reasons for admitting the prior acts, it was permissible for the trial judge to admit the evidence to show intent, or absence of mistake or accident.  *Id.*

### *Absence of Mistake or Accident - Felonious Assault*

Prior bad acts may be admitted if doing so will provide substantial proof of absence of mistake or accident. *State v. Davis*, 62 Ohio St. 3d 326, 338 (1991). At trial, Fletcher argued that Weaver was accidently shot during a struggle to gain control over the gun. Fletcher testified that he did not intend to shoot Weaver (Doc. No. 9-4 at 82), and initially he was unaware that she was shot (Doc. No. 9-4 at 124). Felonious assault requires proof that defendant "knowingly" committed the act, and since Fletcher called this element into question, the prior acts appropriately provided proof of absence of mistake or accident.

The two domestic violence incidents of prior bad acts admitted at trial provided substantial proof of absence of accident. In the first incident, Weaver described how Fletcher picked her up and threw her on the concrete in response to her wetting him with the hose. In the second, Weaver described how Fletcher grabbed her by the throat and pushed her against the wall in response to her demanding that he listen to what she had to say. In this case, Weaver alleges that Fletcher stepped back and intentionally shot her, in response to her waving a gun at him, while Fletcher claims that the gun accidently discharged during a struggle. These prior incidents were admissible to prove that the gunshot was not unexpected or accidental.

### *Intent - Domestic Violence*

"'[P]rior bad acts by a defendant against the same victim are . . . admissible in domestic violence cases to prove the defendant's intent.'" *State v. Blonski,* 125 Ohio App. 3d, 103, 113 (Ohio Ct. App. 1997) (quoting *State v. Johnson*, 73 Ohio Misc. 2d 1, 3 (1994)). The court in *Blonski* added, "[h]owever, when using 'other acts' evidence, to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and

a similar scheme, plan, or system must have been utilized to commit the offense at issue and the other offenses. *Blonski*, 125 Ohio App. 3d at 1174 (citing *State v. Elliott*, 91 Ohio App. 3d 763, 771 (1993)).

In the instant case, the trial court admitted evidence of prior acts of domestic violence by Fletcher against Weaver. In the prior acts, Fletcher became irritated with Weaver and responded with physical violence. Here, after Weaver threatened to take Fletcher's stereo in lieu of the money he owed her, he grabbed her by the chin and head, and "snapped" her neck causing her to fall to the ground (Doc. No. 9-2 at 26). As discussed above, Weaver described other incidents of domestic violence where Fletcher physically lashed out at her for something she did or said to upset him. In this way, a similar scheme, plan, or system was utilized to commit both the instant and prior acts of domestic violence.

There is evidence in the record that the current offense and the prior acts occurred reasonably near each other. Both Weaver and Fletcher testified that their relationship lasted a little over two years, but became contentious only four to six months prior to the shooting. Fletcher testified that he and Weaver had slept in the same bed, but he was sleeping on the couch the last four months preceding the incident (Doc. No. 9-4 at 49). Fletcher testified that prior to him sleeping on the coach, he and Weaver got along (Doc. No. 9-4 at 47): "I mean, we didn't fight - we just didn't - you know what I mean?" Weaver testified that she and Fletcher had been sleeping apart for the six months prior to the incident (Doc. No. 9-2 at 49). Based on the testimony of both Fletcher and Weaver, the prior acts of domestic violence occurred reasonably near the instant offense.

Even assuming the trial court erred in admitting prior bad acts or failed to provide a limiting instruction, the record contains other expert evidence sufficient to support that the gunshot was not an accidental discharge.  There is simply no evidence of a "manifest miscarriage of justice."

**Ineffective Assistance of Trial Counsel**

Fletcher next argues that he was denied effective assistance of counsel when his trial counsel failed to object to the State's testing of a gun and ammunition other than the actual gun from the incident.  He argues that but for his counsel's error, he would not have been convicted (Doc. No. 23 at 6).

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), sets forth the analysis used in ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both prongs of the *Strickland* test.  *Id.*  Furthermore, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Under this deferential standard, Fletcher has failed to demonstrate he is entitled to habeas relief.  To begin, the testimony of Officer Kevin Davis, the State's ballistics expert, was admissible under Ohio Evidence Rule 702 which provides that a witness may testify as an expert if he "is

11

qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."  Officer Davis was properly qualified as an expert given his education, training, and experience with firearms over his long career as a law enforcement officer (Doc. No. 9-3 at 4–11).

Furthermore, Officer Davis was properly allowed to give his opinion regarding the results of his firing tests pursuant to Ohio Evidence Rule 702(C), which permits expert testimony regarding the result of a test, procedure or experiment if the following three criteria are met: "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

A review of the record demonstrates that Officer Davis's testimony comports with the requirements of Ohio Evidence Rule 702(C).  Officer Davis explained that when a gun is fired into a victim at close range, visible powder burns are left on the victim's clothing or skin, and the further away from the point of impact the gun is, the less muzzle blast that remains (Doc. No. 9-3 at 34). Officer Davis tested the effect that differing distances had on the size of powder burns when firing a .45 caliber handgun at close range.  *Id.* at 33–34.  He tested this theory by firing a .45 caliber handgun into a white t-shirt from six, twelve and twenty-four inches away, and extrapolated from this testing that the gun was in excess of one foot away when Weaver was shot.  *Id.* at 44.  Officer Davis also testified that he did not use the gun actually used to shoot Weaver out of concerns for safety and allegations of tampering with evidence.  *Id.* at 61–62.

12

For evidence to be admissible, the exact weapon and ammunition need not be used in the testing. "For out-of-court experiments to be admissible it is not necessary that they be performed under identical conditions to those existing at the time of the occurrence in question; it is sufficient if there is a substantial similarity." *State v. McIntosh*, 1989 WL 8471, at *5 (Ohio Ct. App. 1989) (quoting *State v. McFadden*, 7 Ohio App. 3d 215, 217 (1982)). Upon review of the expert testimony, the gun tested was substantially similar to Fletcher's pistol. Officer Davis stated "the pistol that was used [in the testing] was a pistol that was a .45 ACP and similar design and barreling" (Doc. 9-3 at 50). On redirect, Officer Davis was asked, "[a]re there any significant differences between the actual pistol you used in the test firing and the one at issue?" Officer Davis responded, "No." (Id. at 62). The gun tested and the weapon at issue were substantially similar, and therefore the results obtained during testing were admissible.

Given that Officer Davis's testimony was properly admitted, Fletcher's claim of ineffective assistance of counsel is without merit. However, even if the admissibility of Officer Davis's testimony was a closer call, this Court could not say that Fletcher's counsel's performance was constitutionally insufficient. Officer Davis was subject to cross-examination and Fletcher's counsel questioned Officer Davis on his methodology and his testing of the .45 caliber handgun (Doc. No. 9-3 at 49–52). Fletcher's counsel attempted to demonstrate the weaknesses in Officer Davis's testimony to the jury. The failure to test the gun actually used in the incident goes to the weight of the testimony, not its admissibility. *McIntosh*, 1989 WL 8471, at *5.

**Ineffective Assistance of Appellate Counsel**

Fletcher's remaining objections to the R&R revolve around the alleged ineffective assistance of his appellate counsel to raise the ineffective assistance of Fletcher's trial counsel in Fletcher's

13

direct appeal.  Claims of ineffective assistance of appellate counsel are also reviewed under the two-part test set forth in *Strickland v. Washington*.  The Sixth Circuit notes that:

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

*McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).  The habeas court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). The failure to raise an issue on appeal constitutes ineffective assistance of appellate counsel "[g]enerally only when ignored issues are clearly stronger than those presented . . . ." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Moreover, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Fletcher argues that his appellate counsel was ineffective for failing to argue the following: (1) trial counsel was ineffective for failing to request a limiting instruction; (2) trial counsel was ineffective for failing to object to other acts testimony; and (3) trial counsel was ineffective for failing to object to prejudicial testimony that implied that Fletcher was engaged in illegal activities. These grounds for relief all stem from Fletcher's claim that prejudicial testimony and failure to issue a limiting instruction denied him the right to a fair trial.  This Court addressed this underlying ground above, and found that the alleged underlying errors, if errors at all, were insignificant and did not affect the outcome of his trial.  Having found these claims without merit, appellate counsel cannot be said to have been constitutionally deficient under the *Strickland* test.

Fletcher also alleges that his appellate counsel was ineffective for failing to argue that the failure of the trial court to issue a limiting instruction *sua sponte* is plain error.  However, the Supreme Court of Ohio has rejected such a proposition.  The court noted:

> The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney.  We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested.

*State v. Schaim*, 65 Ohio St. 3d 51, 61, n.9 (1992).  Therefore, unless requested by trial counsel, the trial court is not required to issue a limiting instruction.  Fletcher's appellate counsel did not err by failing to argue a meritless claim -- that the trial court committed plain error by not *sua sponte* issuing a limiting instruction.  Even if a limiting instruction was issued, it is not reasonably likely to change the outcome of the trial given the other evidence presented against Fletcher.

**Prosecutorial Misconduct - Commenting on Fletcher's Silence**.

Fletcher next argues that his appellate counsel was ineffective when he failed to argue that his trial counsel was ineffective for failing to object to the prosecutor's alleged reference to Fletcher's right to remain silent.

Fletcher alleges that at some point he exercised his right to "cease communications" with Detective Michael Schaeffer of the Akron Police Department.  Fletcher asserts that the prosecutor improperly referenced his right to remain silent, which raised an adverse inference of guilt.  Fletcher points to the last two questions posed by the prosecutor in examining Detective Schaeffer (Doc. No. 9-2 at 156-157):

15

Q.    And describe what happened then when he agreed to give you another statement?

A.    His attorney came to me and said he's going to give me a statement about what happened.  We went back into the room and then he told me that there was an argument over some money. . . . It was over money, and that she had grabbed the gun.  He tried to get it off of her and it went off.  I tried to ask a few more questions and they wouldn't elaborate any more on the situation.

Q.    And did he further then reiterate that he took her to the hospital, dropped her off, had to go home and secure the house?

A.    I don't know if we so much went into that portion of it.  I was mainly concerned about what happened at - in the living room at the time that the - Ms. Weaver had been shot.

Q.    And that was the end of his statement?

A.    Yes.

Q.    And he did not wish to elaborate further?

A.    No.

The Sixth Circuit has made clear that "the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination."  *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000).  However, where improper comments on a defendant's silence are indirect, the court considers the following factors:

(1) whether the comments were manifestly intended to reflect on the accused's silence or are of such a character that the jury would "naturally and necessarily" construe them as such; (2) whether the comments were isolated or extensive; (3) whether there was otherwise overwhelming evidence of guilt; and (4) whether appropriate curative instructions were given.

*United States v. Wells*, 623 F.3d 332, 338 (6th Cir. 2010).  "The court will not find manifest intent if some other explanation for the prosecutor's remarks is equally plausible."  *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988) (citing *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981)).

Fletcher's decision not to further elaborate on his version of the facts was not an exercise of his right to remain silent.  Fletcher already had given more than one statement.  He had described how

16

Weaver was shot, how he dropped her off at the hospital, and how he then went home to secure the house. No reasonable juror would naturally and necessarily construe the prosecutor's questions as referencing Fletcher's desire to remain silent. The more plausible explanation is that the prosecutor intended to show that Fletcher's follow-up statement had ended or concluded. Given that both Officer Sutton and Detective Schaeffer had testified as to Fletcher's statements, the prosecutor's comments cannot be seen as a manifest intent to comment on Fletcher's right to remain silent. Moreover, this is an isolated instance. Fletcher does not complain of, nor can this Court find, any other reference to Fletcher's alleged exercise of his right to remain silent.

There is also other evidence of Fletcher's guilt in this case. It may have been sound strategy for counsel to not request a limiting instruction, and therefore avoid creating an inference of guilty silence where one cannot be found. This Court will not second guess the professional judgment of trial counsel. *See Strickland,* 466 U.S. at 689; *Yarborough v. Gentry,* 540 U.S. 1, 8 (2003) (citing *Massaro v. United States,* 538 U.S. 50, 505 (2003)). The prosecutor neither directly nor indirectly referenced Fletcher's right to remain silent. As the underlying claim fails, Fletcher's claim of ineffective assistance of appellate counsel also fails.

**Prosecutorial Misconduct - Fletcher 's Inconsistent Statements**

Fletcher next argues that his appellate counsel was ineffective when he failed to argue that trial counsel failed to object to the prosecution's misstatement of facts during closing arguments. "[P]rosecutorial misconduct is a two-step inquiry: determining whether the statements were improper; and, if so, determining whether they were flagrant enough to warrant reversal." *Wells*, 623 F.3d at 338. To determine prejudicial error, improper prosecutorial comments must be evaluated in the context of the entire trial. *United States v. Young*, 470 U.S. 1, 11–12 (1985). The prosecutorial

17

misconduct must have been "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Wells*, 623 F.3d at 338.

Fletcher argues the entire trial was a credibility contest, and that during closing arguments the prosecutor mislead the jury and prejudiced the trial by commenting, "[d]ogs were in the fence -- he doesn't even have a fence" (Doc. No. 9-5 at 27). Fletcher testified, "I don't have a fenced-in yard" (Doc. No. 9-4 at 66). However, Officer Sutton testified that during his investigation, Fletcher told him there was a fenced in yard (Doc. No. 9-2 at 113–114). While it is improper for a prosecutor, during closing arguments, to proffer any "purported facts that are not in evidence and are prejudicial," *United States v. Wiedyk*, 71 F.3d 601, 610 (6th Cir. 1995), the prosecutor may "summarize the evidence and comment on its quantitative and qualitative significance." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994). The prosecutor properly gave a summary of conflicting stories Fletcher gave law enforcement authorities during investigation and it was for the jury to determine the credibility of the testimony. Thus, the prosecutor's statements were permissible.

As such, appellate counsel cannot be found constitutionally deficient for failing to raise ineffective assistance of trial counsel where no error occurred.

**Prejudicial Testimony - Number of Guns in Fletcher 's Home**

Fletcher next argues his appellate counsel was ineffective when he failed to argue that his trial counsel was ineffective for failing to object to the number of guns in Fletcher's home. Fletcher's underlying argument regarding prejudicial testimony is superfluous, and without a legally cognizable basis.

A claim of ineffective assistance of appellate counsel may only prevail "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Here, Fletcher fails to demonstrate why an inventory of his guns was not admissible evidence. It was Fletcher who first told Officer Sutton that he owned many guns. In his first depiction of what transpired, Fletcher claimed that Weaver's injury was an attempted suicide. He stated that the shooting was not accidental because his guns were always accessible, and Weaver would not have taken this occasion to play with them (Doc. No. 9-2 at 114-115). Additionally, the evidence was relevant as to whether Fletcher had a habit of engaging the safety on his weapons, and his familiarity with disengaging the safety. Finally, Fletcher has failed to show that had trial counsel objected to the testimony, the outcome of his trial would have changed.

**Prejudicial Evidence - Movie Rental**

Fletcher next argues that his appellate counsel was ineffective when he failed to argue that his trial counsel failed to object to prejudicial testimony relating to a movie rental. However, the transcript reveals that when the prosecutor questioned Weaver regarding Fletcher's  rental of the movie "Desperation," defense counsel objected five times, and the trial court sustained four of these objections (Doc. No. 9-2 at 68). A sidebar was then held and no further questions were asked about the movie in the presence of the jury. Following these objections by defense counsel, the State proffered the testimony regarding the movie to the court, outside the presence of the jury (Doc. No. 9-2 at 185–90).

Fletcher's claim of ineffective assistance of appellate counsel on this ground is meritless because the transcript reveals his underlying claim -- that defense counsel did not object to the movie

rental testimony -- is not even factually accurate.  Defense counsel objected where appropriate and any testimony regarding the movie rental was not heard by the jury.

**Cumulative Error**

Finally, Fletcher argues that his appellate counsel was ineffective when he failed to argue that the cumulative effect of errors made at trial were prejudicial.  *Strickland* mandates that the cumulative effect of all of counsel's errors must be considered against the totality of evidence in the case. *Mackey v. Russell* 148 F. App'x. 355, 369 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 690, 695–96; *Williams*, 529 U.S. at 395–96, 398–99 (considering multiple errors of counsel cumulatively in finding prejudice in light of the "entire record, viewed as a whole"); *Kyles v. Whitley*, 514 U.S. 419, 434, 436 (1995)).

In the present case, Fletcher relies heavily on *Mackey v. Russell*.  In *Mackey*, the court acknowledged that "[i]n the vast majority of cases, where there is significant evidence supporting the conviction, the type of errors at issue here would be unlikely to affect the jury's verdict."  *Mackey*, 148 F. App'x at 369.  The court added, "[h]ere, however, the paucity of evidence against Mackey was striking."  *Id.*  Both Mackey and Russell drew guns, but Mackey shot and killed Russell.  *Id.* at 358. Other than Mackey pleading self defense, there was no evidence as to who drew his gun first.  The jury had no choice but to rely solely on Mackey's credibility.  *Id.* at 369.

Fletcher's facts are distinguishable from *Mackey*.  Here, the victim was alive and testified as to her rendition of the facts which, if believed, established Fletcher's criminal liability.  The jury also heard expert ballistic testimony, which corroborated Weaver's story.  The state called ten witnesses, and the defense called two witnesses.  Unlike the lack of evidence in *Mackey*, there was sufficient evidence of Fletcher's guilt.

20

This Court is hard-pressed to find any prejudicial errors in the record. However, even assuming that there were multiple counts of harmless error, when weighed against the totality of evidence in this case, Fletcher's claim of cumulative error fails.

### CONCLUSION

After conducting a *de novo* review, Petitioner's objections are not well-taken. Accordingly, the Petition for Writ of Habeas Corpus is dismissed. Petitioner's Motion for Reconsideration (Doc. No. 18) is also denied, as the information sought by Petitioner through discovery would not damage this Court's determination. Furthermore, under 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith.

IT IS SO ORDERED.

　*s/ Jack Zouhary*　
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 24, 2011